IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

**YVONNE MARTIN** personal representative of the ESTATE OF PAUL MCDONALD, formerly a resident of the Town of Madison, Somerset County, State of Maine,

    Plaintiff,

    v.

**SOMERSET COUNTY,** State of Maine,

and

**DALE LANCASTER,** in his official Capacity as Sheriff of Somerset County,

and

**GARY CRAFTS** in his official and individual capacity as a Captain at the Somerset County Jail,

and

**PHILLIP CAMPBELL** in his official and individual capacity as a Lieutenant Officer at the Somerset County Jail,

and

**SHANNON POOLER**, in her official and individual capacity as a Corrections Officer at the Somerset County Jail,

and

| | |
|---|---|
| **CRAIG MEUNIER** in his official and individual capacity as a Corrections Officer at the Somerset County Jail, | ) ) ) ) |
| and | ) ) |
| **GERARD MADORE** in his official and individual capacity as a Corrections Officer at the Somerset County Jail, | ) ) ) ) |
| and | ) ) |
| **MICHEAL BERUBE** in his official and individual capacity as a Corrections Officer at the Somerset County Jail, | ) ) ) ) |
| and | ) ) |
| **ELIGAH MUNN** in his official and individual capacity as a Corrections Officer at the Somerset County Jail, | ) ) ) ) |
| and | ) ) |
| **OFFICER HANSEN** in his official and individual capacity as a Corrections Officer at the Somerset County Jail, | ) ) ) ) |
| and | ) ) |
| **GARY DAVIS** in his official and individual capacity as a Corrections Officer at the Somerset County Jail, | ) ) ) ) |
| and | ) ) |
| **MEDPRO Associates,** a Limited Liability Company, | ) ) ) |
| and | ) |

| | |
|---|---|
| **CHERYLL NEEDHAM**, in her official and individual capacity as a medical and/or mental health provider at Somerset County Jail, | ) ) ) ) ) |
| and | ) ) |
| **JANE AND JOHN DOES #1-5**, in their official and individual capacities as Corrections Officers at the Somerset County Jail | ) ) ) ) ) |
| and | ) ) |
| **JANE AND JOHN DOES #6-10**, in their official and individual capacities as employees, administrators, officials or Policy makers of MedPro. | ) ) ) ) ) ) |

Defendants.

## I. JURISDICTION

1. This claim is brought under the Civil Rights Act of 1871, 42 U.S.C. §1983. This Court has jurisdiction to hear this claim under 28 U.S.C. §§ 1331, 1342 (3) and (4). Jurisdiction over the state law claims is conferred by 28 U.S.C. §§ 1367. Venue is proper in this Division.

## II. THE PARTIES

2. Yvonne Martin, the mother of Paul McDonald, the deceased, brings this suit as the personal representative of the Estate of Paul McDonald for the benefit of his kin and heirs.

3. Paul McDonald was a resident of the Town of Madison, in Somerset County Maine.

4. Defendant Dale Lancaster was with the Sheriff of Somerset County, State of Maine, at the time of the incident, and in his capacity as Sheriff of Somerset County with responsibility for the oversight and operations of the Somerset County Jail and is a "person" under 42 U.S.C. §1983, and is being sued in his individual and official capacities.

5. Defendant Gary Crafts was, at all times relevant a Captain at the Somerset County Jail, is a "person" under 42 U.S.C. §1983, and is being sued in his individual and official capacities.

6. Defendant Phillip Campbell was, at all times relevant a Lieutenant at the Somerset County Jail, is a "person" under 42 U.S.C. §1983, and is being sued in his individual and official capacities.

7. Defendant Shannon Pooler was at all times relevant a Corrections Officer at the Somerset County Jail, is a "person" under 42 U.S.C. §1983, and is being sued in his individual and official capacities.

8. Defendant Craig Meunier was at all times relevant a Corrections Officer at the Somerset County Jail, is a "person" under 42 U.S.C. §1983, and is being sued in his individual and official capacities.

9. Defendant Gerard Madore was at all times relevant a Corrections Officer at the Somerset County Jail, is a "person" under 42 U.S.C. §1983, and is being sued in his individual and official capacities.

10. Defendant Micheal Berube was at all times relevant a Corrections Officer at the Somerset County Jail, is a "person" under 42 U.S.C. §1983, and is being sued in his individual and official capacities.

11. Defendant Eligah Munn was at all times relevant a Corrections Officer at the Somerset County Jail, is a "person" under 42 U.S.C. §1983, and is being sued in his individual and official capacities.

12. Defendant Officer Hansen was at all times relevant a Corrections Officer at the Somerset County Jail, is a "person" under 42 U.S.C. §1983, and is being sued in his individual and official capacities.

13. Defendant Gary Davis was at all times relevant a Corrections Officer at the Somerset County Jail, is a "person" under 42 U.S.C. §1983, and is being sued in his individual and official capacities.

14. Defendant Medpro Associates is a limited liability company which at all times relevant was contracted by the Somerset County Jail to provide medical services to inmates of Somerset County Jail.

15. Defendant Cheryll Needham was at all times relevant an employee of MedPro and is a "person" under 42 U.S.C. §1983, and is being sued in her individual and official capacities.

16. Defendants Jane and John Does #1-5 were at all times relevant employees of the Somerset County Jail, are a "person" under 42 U.S.C. §1983, and are being sued in his individual and official capacities.

17. Defendants Jane and John Does #6-10 were at all times were at all times relevant employees of the MedPro, are a "person" under 42 U.S.C. §1983, and are being sued in their individual and official capacities.

### III.  FACTS

18. On July 2, 2015 Paul McDonald was arrested for a violation of probation after being found with drug paraphernalia.

19. He was not extremely responsive when law enforcement encountered him and he was transported by ambulance to Reddington Fairview Hospital.

20. Later that day, Reddington Fairview Hospital discharged him, clearing him medically for jail.

21. Included in the discharge paperwork was an indication that he needed crisis and counseling services.

22. He was also suffering physical symptoms due to withdrawing from opiates.

23. Paul McDonald was "booked" into Somerset county Jail on July 2, 2015.

24. As part of the booking process, his name was searched on the state computer.

25. That search yielded information that he had made past threats of suicide, and had a past suicide attempt.

26. He was classified as a high risk for suicide.

27. He was classified within the jail as "maximum" risk.

**July 6, 2015 Risk Assessment**

28. Somerset County Jail Staff had referred Paul McDonald for a risk assessment due to his high risk for suicide.

29. This risk assessment confirmed that Paul had made 13 suicide attempts in the past including an attempt via hanging.

30. He was currently displaying a mood of anxiousness, hopelessness, worthlessness and was angry and irritable.

31. He had previously engaged in outpatient therapy, inpatient programs, crisis placements and hospitalizations as a result of his mental health.

32. The risk assessment concluded that he exhibited the following 6 suicide risk factors: 1) previous attempts; 2) worthlessness; 3) psychosis/thought disorder; 4) substance abuse; 5) lack of supports; 6) impulsivity.

33. He rated himself a 10 for suicide risk on a scale of 1-10.

34. He was listed as emergent for 24-48 hours, and it was recommended that he be kept on special management observation.

35. He was placed in a smock for safety.

36. A slow transition was recommended.

**July 7, 2015 Risk Assessment**

37. On July 7th, 2015, Cheryl Needham met with Paul McDonald to do a continuation of the risk assessment.

38. Cheryl Needham recommended that he be allowed regular clothing.

**July 8, 2015Assessment**

39. On July 8, 2015 Cheryl Needham, MSW, MHRT-C of Medpro Behavioral Services conducted a risk assessment continuation.

40. She reported that he had made no threats of harm and was cleared for general population.

41. She recommended no further follow-up unless Paul requested it.

**Prior Incarcerations**

42. Paul McDonald had been held at Somerset County Jail on previous occasions.

43. During one occasion on May 21, 2012 Somerset County Correctional staff had made an internal referral when Paul McDonald threatened to hang himself.

44. During another occasion, on October 3, 2014 Paul McDonald was categorized as high risk for suicide and referred to hanging himself in his cell.

45. During the July 2015 incarceration, Yvonne Martin contacted medical staff to tell them Paul had a history of suicide attempts, including to her knowledge, a prior attempt while at the jail.

**Events of July 9, 2015**

46. On July 9, 2015, Paul McDonald was being held in general population.

47. C/O Madore did not log the activities in Paul McDonald's area.

48. C/O Madore did not conduct security rounds as required.

49. At approximately 2:00pm Paul McDonald was alone in his cell.

50. Paul had approximately 10 minutes unobserved prior to "med pass."

51. At approximately 1:58 pm Officers Pooler and Meunier entered A-pod with medical technician Pattie Bixbie.

52. Officer Pooler arrived at Paul's cell and noticed he "didn't look okay."

53. She banged on the door and received no response.

54. She noticed a brown sheet tied above his head to the window beam.

55. He was sitting up on his bunk, his skin appeared to be gray and color and his hands were resting in his lap.

56. He did not appear to be breathing.

57. Officer Pooler called a "code blue" at 2:02pm on July 9, 2015.

58. Officer Meunier responded to the cell and cut the sheet that was tied tightly around Paul's neck.

59. Meunier started CPR.

60. At approximately 2:03 pm Lt. Campbell notified central to call 911 and request EMS respond.

61. At approximately 2:07 pm EMS arrived

62. During the wait, RN Laurie Vellieux responded and noted that Paul was unresponsive, his eyes were open, he had pale skin and he was not breathing.

63. She tried but was unable to obtain a radial pulse.

64. Staff Development Specialist Michael Berube, Office Meunier, Officer Moore and Officer Madore performed chest compressions and rescue breaths.

65. Officer Berube used the AED to assess Paul, but no shocks were issued.

66. Officer Eligah Munn responded and recorded the incident via camera.

67. Captain Gary Crafts responded to the incident and recored a scene log of events.

68. Officer Hansen observed the AED assessment.

69. Officer Gary Davis responded with a spare camera to record.

70. EMS took over the scene and applied a cervical collar and moved Paul to a stretcher.

71. Paul had a pulse but was not breathing.

72. Rescue breaths via bag were continued until Paul was intubated.

73. Paul was transferred via ambulance to Farrington-Fairview General Hospital.

**Farrington-Fairview General Hospital**

74. Paul was admitted to Farrington-Fairview General Hospital at approximately 2:51 pm.

75. He was given a treatment of fosphenytoin and transported via life flight to Maine Medical Center in Portland.

**Maine Medical Center**

76. Paul was evaluated by the Emergency Department on July 9 and admitted for airway management and a presumed anoxic brain injury.

77. On July 10, 2015 a follow up CT scan of his head showed a global anoxic injury with expanding cerebral edema.

78. On July 13, 2015 his condition further deteriorated and a follow up CT scan showed a worsening cerebral edema and impending transtenorial herniation.

79. On July 13, 2015 an MRI showed global anoxic injury and Paul failed to show improvement on the neurologic exam.

80. On July 16, 2015 Paul was extubated and passed away.

**Autopsy**

81. On July 17, 2015 an autopsy was performed by Dr. Flomenbaum, Cheif Medical Examiner of the State of Maine.

82. Dr. Flomenbaum concluded that Paul's cause of death was "anoxic encephalopathic complications of attempted hanging."

**Previous Failure to Provide Medical Treatment Resulting in a Death**

83. Upon information and belief, on May 28, 2014 Joseph Daost died while in the custody of the Somerset County Jail.

84. Upon information and belief Mr. Daost exhibited symptoms of mental health distress.

85. Mr. Daost then exhibited symptoms of pulmonary hemorrhage.

86. Mr. Daost was not provided adequate mental health treatment or medical care.

87. Mr. Daost passed away as a result of untreated pulmonary hemorrhage which resulted in cerebral edema.

88. The Defendants were on notice that a previous inmate had passed away as a result of inadequate care.

89. The Defendants were on notice that Mr. McDonald exhibited suicidal tendencies, including a threat to hang himself during prior incarcerations.

90. The Defendants were on notice that Mr. McDonald required crisis management and counseling.

91. The Defendants were deliberately indifferent to the serious medical need of Mr. McDonald by failing to provide adequate medical care and failure to properly observe and protect Mr. McDonald.

92. Defendants Somerset County and Defendant Sheriff Lancaster were deliberately indifferent to the serious medical needs of Mr. McDonald by failing to train and supervise staff and failing to establish and implement jail policies, practices, customs and usages that trained and enabled Jail staff to adequately recognize and adequately respond to a prisoner's serious mental health and physical medical needs, including those manifested by Mr. McDonald.  This failure to train was a moving force behind Mr. McDonald's injury and death.

93. The conduct of the Defendants shocks the conscience and violates the duty of care owed to inmates within their custody.

## COUNT I

## VIOLATION OF 42 U.S.C. § 1983- CORRECTIONS AND COUNTY DEFENDANTS

94. Plaintiff repeats and re-alleges each and every allegation contained in paragraph one through ninety-three as if expressly set forth herein.

95. All Corrections and County Defendants have, under color of law, deprived Paul McDonald, a pretrial detainee, of rights, privileges and immunities secured by the Eight Amendment to the U.S. Constitution as incorporated by the Fourteenth Amendment and applied to the States, including but not limited to the right to adequate medical care while incarcerated.

96. Defendants were each deliberately indifferent to Paul McDonald's serious medical needs.  Each was aware of Mr. McDonald's mental health needs and were deliberately indifferent to his medical needs by failing to provide him any mental health care and by failing to provide him with adequate supervision and observation.

97. Corrections Defendants improperly removed Mr. McDonald's high risk classification which resulted in him being housed in general population with a lower level of supervision and observation.

98. Defendants Somerset County, Defendant Sheriff Lancaster and John and Jane Does #1-5 were deliberately indifferent to Mr. McDonald's serious medical needs by failing to adequately train and supervise Jail staff to recognize and respond when prisoners suffer from obvious serious medical needs.  As a

result, Mr. McDonald did not receive appropriate mental health and medical care, nor was he properly supervised. As a direct and proximate result of these actions Mr. McDonald lost his life.

99. The rules, regulations, customs, policies and procedures of the Defendants regarding the diagnosis, treatment and management of prisoners within the Jail with serious medical needs, including those suffering from mental and physical illness were inadequate and unreasonable and deprived Paul McDonald of his constitutional right to life.

## COUNT II

### VIOLATION OF 42 U.S.C. § 1983- MEDPRO ASSOCIATES

100. Plaintiff repeats and re-alleges each and every allegation and averment contained in paragraph one through ninety-nine as if expressly set forth herein.

101. The failure to hire, train and supervise employees along with the policies, customs, and practices of MedPro Associates, LLC and its policy makers comprise the cause of and moving force behind the constitutional violations at issue in this complaint.

102. Defendant MedPro and Cheryll Needham had knowledge of Mr. McDonald's serious medical needs.

103. Defendant MedPro and Cheryll Needham exhibited deliberate indifference to McDonald's serious medical needs which result in the death of Mr. McDonald.

104. Defendant MedPro and Cheryll Needham unreasonably and or intentionally committed acts and/or omissions while acting under the color of state law that violated Mr. McDonald's clearly established right to due process as enumerated by the Fifth and Fourteenth Amendments to the United States Constitution.

105. Defendant MedPro and Cheryll Needham unreasonably and or intentionally committed acts and or omissions while acting under the color of state law that violated Mr. McDonald's clearly established right to be free from cruel and unusual punishment as enumerated by the Eight Amendment to the United States Constitution.

## JURY DEMAND

Plaintiff demands a Jury trial on all matters triable to a jury in her Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands that this Court:

A.  Award Plaintiff an amount of damages deemed reasonable by the trier of facts sufficient to compensate Plaintiff.

B.  Award Plaintiff punitive damages in an amount sufficient to punish and deter Defendants in the future from engaging in this form of malicious conduct.

C.	An award of pre-judgment interest from the earliest date allowable by law at the highest rate allowable by law.

D.	Costs and attorneys' fees to the extent allowable by law.

E.	Such further relief as the Court deems proper and just.


Dated at Portland, Maine this 16th day of July, 2021.	Respectfully Submitted,

/s/ Kristine C. Hanly,
Kristine C. Hanly, Esq.
Attorney for Plaintiff

HANLY LAW, LLC
1 Union Street, Suite 401
Portland, ME 04101
207(699)-2278
Kristine@HanlyLaw.com