## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| YVONNE MARTIN, Personal | ) | |
| Representative of the ESTATE OF | ) | |
| PAUL MCDONALD, | ) | |
| | ) | |
| Plaintiff, | ) | Docket No. 1:21-cv-00199-NT |
| | ) | |
| v. | ) | |
| | ) | |
| SOMERSET COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANTS MEDPRO ASSOCIATES AND CHERYL NEEDHAM'S PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Before me is Defendants MedPro Associates and Cheryl Needham's motion to dismiss Count II of Plaintiff Yvonne Martin's complaint (ECF No. 27). For the following reasons, the motion is **GRANTED**.

## FACTUAL BACKGROUND[1]

This suit was brought by Yvonne Martin as personal representative of the estate of her son, Paul McDonald. Compl. ¶ 2 (ECF No. 1). On July 2, 2015, Mr.

---

[1] These facts, which I take as true for the purpose of this motion, are drawn from the Complaint (ECF No. 1). *See Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021). In addition, I consider the documents attached to the Defendants' motion to dismiss. "Ordinarily, [on a motion to dismiss,] a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). There are, however, narrow exceptions "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Thus, "[w]hen the complaint relies upon a document, whose authenticity is not challenged, such a document 'merges into the pleadings' and the court may properly consider it under a Rule 12(b)(6) motion to dismiss." *Alt. Energy, Inc.*, 267 F.3d at 33 (quoting *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998)). Here, I may consider the documents attached to the motion to dismiss because the Complaint specifically refers to the risk

McDonald was arrested for a violation of probation after being found with drug paraphernalia. Compl. ¶ 18. Because he was "not extremely responsive" when he was encountered by law enforcement, Mr. McDonald was transported by ambulance to Reddington Fairview Hospital. Compl. ¶ 19. Mr. McDonald was discharged from the hospital later that day and cleared medically for jail, but he was experiencing physical symptoms from opiate withdrawal and his discharge paperwork indicated that he needed crisis and counseling services. Compl. ¶¶ 20–22.

That same day, July 2, 2015, Mr. McDonald was booked into Somerset County Jail. Compl. ¶ 23. A search of Mr. McDonald's name in a state database as a part of the booking process yielded information that Mr. McDonald had made past threats of suicide and had previously attempted suicide. Compl. ¶¶ 24–25. As a result of these findings, Mr. McDonald was classified as at a high risk for suicide and referred by Somerset County Jail Staff for a risk assessment. Compl. ¶¶ 26, 28.

On July 6, 2015, Defendant Cheryl Needham, a trained social worker and mental health technician, conducted the risk assessment. Compl. ¶ 39; Defs.' MedPro Associates & Cheryl Needham's Mot. to Dismiss Pl.'s Compl. ("**MTD**") Exs. A, B (ECF Nos. 27-1 & 27-2). Ms. Needham was an employee of Defendant MedPro Associates ("**MedPro**"), a company that was contracted by Somerset County Jail to provide medical services to inmates. Compl. ¶¶ 14–15. Ms. Needham confirmed that Mr. McDonald had made thirteen past suicide attempts, including an attempt via

---

assessments performed by Defendant Needham on July 6, 7, and 8, Compl. ¶¶ 28–41, and the documents' authenticity is not challenged.

hanging, and that he had previously engaged in outpatient therapy, inpatient programs, crisis placements, and hospitalizations as a result of his mental health struggles. Compl. ¶¶ 29, 31; MTD Ex. A, at 2, 5 (ECF No. 27-1). During the assessment, Mr. McDonald reported feeling "Sad/Depressed," "Anxious," "Angry/Irritable," and told Ms. Needham that he was having feelings of "worthlessness/hopelessness." Compl. ¶ 30; MTD Ex. A, at 3. In addition, he rated himself a ten for suicide risk on a scale of one to ten. Compl. ¶ 33; MTD Ex. A, at 6. Ms. Needham concluded that Mr. McDonald was exhibiting numerous suicide risk factors, including previous attempts, worthlessness, psychosis/thought disorder, substance abuse, lack of supports, hopelessness, and impulsivity. Compl. ¶ 32; MTD Ex. A, at 5. Mr. McDonald was listed as emergent for 24 to 48 hours and it was recommended that he be kept on "special management observation." Compl. ¶ 34; MTD Ex. A, at 6. He was placed in a smock for safety and a slow transition was recommended. Compl. ¶¶ 35–36; MTD Ex. A, at 7.

The following day, on July 7, Ms. Needham, met with Mr. McDonald to continue the risk assessment. Compl. ¶¶ 37, 39.  In her report, Ms. Needham wrote that Mr. McDonald "reported feeling much better and stated his suicide risk was low." MTD Ex. B, at 1. Ms. Needham recommended that Mr. McDonald be allowed regular clothing. MTD Ex. B, at 1. The next day, July 8, 2015, at another risk assessment continuation, Ms. Needham reported that Mr. McDonald "was a completely different person . . . [,] was smiling and laughing . . . [, and] stated that he was feeling much better." MTD Ex. C, at 1 (ECF No. 27-3). In a summary of the assessment, Ms.

Needham wrote that Mr. McDonald had made no threats of harm and that he was "cleared by mental health . . . and all restrictions were lifted." Compl. ¶ 40; MTD Ex. C, at 1. She also recommended no further follow up unless Mr. McDonald requested it. Compl. ¶ 41; MTD Ex. C, at 1.

The very next afternoon, on July 9, 2015, Mr. McDonald was alone in his cell. Compl. ¶ 49. A corrections officer at the jail was supposed to have conducted security rounds of Mr. McDonald's area, but, for some unknown reason, he failed to do so. Compl. ¶ 48. As a result, Mr. McDonald had approximately ten minutes where he was unobserved prior to a "med pass"—what I assume to be a medical check-in. Compl. ¶ 50. When officers did finally arrive to check on Mr. McDonald, he was unresponsive, with a brown sheet tied tightly around his neck that was connected to a window beam. Compl. ¶¶ 54, 56, 58. The officers present cut the sheet from Mr. McDonald's neck, commenced CPR, and requested emergency medical care for Mr. McDonald. Compl. ¶¶ 58–60. Emergency medical personnel arrived a few minutes later, at which point Mr. McDonald was transferred to the hospital. Compl. ¶¶ 61, 70, 73, 74, 75. Mr. McDonald's condition continued to decline, and he died on July 16, 2015. Compl. ¶¶ 78, 80, 82.

Mr. McDonald was not the first inmate at Somerset County Jail to die while in custody. On May 28, 2014, an inmate named Joseph Daost "passed away as a result of untreated pulmonary hemorrhage." Compl. ¶¶ 83, 87. The Plaintiff alleges that Mr. Daost "was not provided adequate mental health treatment or medical care." Compl. ¶ 86.

On July 16, 2021, the six-year anniversary of her son's death, Ms. Martin filed a lawsuit against Somerset County, various jail officials, MedPro, and MedPro employee Cheryl Needham. As is relevant here, Count II of the Complaint asserts constitutional claims against MedPro and Ms. Needham pursuant to 42 U.S.C. § 1983. Compl. ¶¶ 100–105. Now, MedPro and Ms. Needham move to dismiss Count II—the claims against them—arguing that the Plaintiff's claims are untimely and that her Complaint fails to state a plausible claim for relief. Defs.' MedPro Associates & Cheryl Needham's Mot. to Dismiss Pl.'s Compl. ("**MTD**") 5–6 (ECF No. 27).

## LEGAL STANDARD

The Defendants' motion to dismiss invokes Federal Rule of Civil Procedure 12(b)(6). When evaluating a motion to dismiss, I take "as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011)). "[A] complaint will survive a motion to dismiss when it alleges 'enough facts to state a claim to relief that is plausible on its face.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible" if the facts alleged give rise to a reasonable inference of liability. *Id.* "Plausible" means "more than merely possible." *Germanowski v. Harris*, 854 F.3d 68, 71 (1st Cir. 2017) (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)).

5

## DISCUSSION

At the outset of their motion, the Defendants argue that the claims against them should be dismissed for lack of timeliness. MTD 6. The parties agree that claims under 42 U.S.C. § 1983 are governed by Maine's six-year residual statute of limitations. MTD at 6; Pl.'s Resp. in Opp'n to Defs. Med Pro Associates and Cheryl Needham's Mot. to Dismiss Pl.'s Compl. ("**Pl.'s Resp.**") 1 (ECF No. 37); *see also Small v. Inhabitants of Belfast*, 796 F.2d 544, 546 (1st Cir. 1986). The parties diverge, however, as to what law governs the date of accrual of the Plaintiff's claims. The Plaintiff, citing Maine's Wrongful Death Act, 18-C M.R.S. § 2-807, argues that the claims against MedPro and Defendant Needham accrued at her son's death. Pl.'s Resp. 2–5. By contrast, the Defendants assert that accrual is governed by federal law. MTD 6. The Defendants are correct.

The Supreme Court decided over fifteen years ago that "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato,* 549 U.S. 384, 388 (2007); *Álamo-Hornedo v. Puig*, 745 F.3d 578, 581 (1st Cir. 2014) ("Although section 1983 borrows its limitations period from state law, the accrual date for a section 1983 claim is measured by federal law."). And, "[u]nder federal law, such a cause of action accrues 'when the plaintiff knows, or has reason to know of the injury on which the action is based.' " *Álamo-Hornedo*, 754 F.3d at 581 (quoting *Morán Vega v. Cruz Burgos*, 537 F.3d 14, 20 (1st Cir. 2008)); *see also Ouellette v. Beaupre*, 977 F.3d 127, 136 (1st Cir. 2020) ("[For a § 1983 claim,] accrual is delayed until the plaintiff knows, or should know, of those acts. Specifically,

a plaintiff must, or should, be aware of both the fact of his or her injury and the injury's likely causal connection with the putative defendant.").

The remaining question is whether the claim accrued on the date that Mr. McDonald became aware of the acts upon which the action is based or the date that Ms. Martin became aware of the acts upon which the action is based. It appears that the First Circuit has never addressed this issue directly, but in survivor actions like this one, "[t]he great weight of federal authority favors a finding that" the date of accrual is "tied to the date when the injured party knows or has reason to know of the injury, for deciding when a § 1983 claim accrues." *Garrett v. Belmont Cnty. Sheriff Dep't*, No. 2:08–cv–0452, 2011 WL 765975, at *3–4 (S.D. Ohio Feb. 25, 2011); *see also, e.g.*, *Est. of Jackson v. City of Modesto*, 2021 WL 4819604, at *8 (E.D. Cal. Oct. 14, 2021) ("[T]he focus of a survival claim for purposes of accrual is generally on what the decedent knew or should have known."); *Guarnieri v. Scudder*, 3:18-cv-237, 2019 WL 1370092, at *2 (N.D.N.Y. Mar. 26, 2019) (explaining that in the context of a survival action, "the only allegation relevant to ascertain an accrual date . . . is the date that [the injured party] knew of the injury that forms the basis of these § 1983 claims," not the date that the administratrix of the injured party's estate knew of the injury); *Brockman v. Tex. Dep't of Crim. Just.*, 397 Fed. Appx. 18, 22 (5th Cir. 2010) (finding that § 1983 survival claim accrued when the decedent knew or "should have known the quality of the treatment he was receiving," not when the decedent died); *Lockhart v. Gov't of V.I.*, Civil Action Nos. 05–125, 05–126, 05–127, 2009 WL 812266, at *6 (D.V.I. Mar. 26, 2009) (holding that federal cause of action accrued on date of

decedent's shooting, not his death, because decedent's "injuries were complete" on that date and thus "the exact time of his death [was] irrelevant and immaterial to the accrual of his § 1983 claim"); *Ferderbar v. Cnty. of Allegheny*, No. Civ. A. 05-1518, 2006 WL 909478, at *3 (W.D. Pa. Apr. 7, 2006) (holding that the § 1983 claims accrued on the day the decedent was shot, not on the day he died). The Plaintiff cites one case that would suggest a contrary result, *Camps v. City of Warner Robins*, 822 F. Supp. 724 (M.D. Ga. 1993). "However, that decision appears to have looked to state law to determine when a § 1983 cause of action accrues, which is clearly inconsistent with the rule applicable in this (and most) circuits, which is that federal law provides the answer to this question." *Garrett*, 2011 WL 765975, at *4.

Here, the Plaintiff's Complaint was filed exactly six years after her son's death. But the Plaintiff's claims on behalf of her son's estate accrued not at the time of her son's death, but rather eight days before, on or before July 8, 2015, which was the date her son knew or should have known of the allegedly deficient medical treatment provided by the Defendants Cheryl Needham and MedPro Associates. Thus, the Plaintiff's claims against the Defendants, brought six years and eight days after the date of accrual, are barred by the six-year statute of limitations.[2]

The Plaintiff argues that even if the claims accrued on or before July 8, 2015, that her "time for filing was tolled from the time period of the last evaluation through [Mr. McDonald's] death." Pl.'s Resp. 5–6. Federal courts "generally refer[ ] to state

---

[2]    I note that this holding applies to the claims against Defendants Cheryl Needham and MedPro Associates.  I make no judgment as to the accrual date of the claims against the other defendants in this action.

law for tolling rules" as they do for the length of statutes of limitations. *Wallace*, 549 U.S. at 394. The Plaintiff does not point to any state tolling rule that would apply,[3] but she does make an argument for equitable tolling. Pl.'s Resp. 6. The First Circuit has "left open the question of whether the equitable tolling of § 1983 actions is governed by state or federal law." *Vistamar, Inc. v. Fagundo-Fagundo*, 430 F.3d 66, 71–72 (1st Cir. 2005). However, neither state nor federal equitable tolling doctrines support the Plaintiff's claim.

Both federal and state law dictate that equitable tolling is an extraordinary remedy. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also Geller v. David M. Banks Realty, Inc.*, No. Civ. A. CV-04-703, 2005 WL 2715453, at *3 (Me. Super. Ct. May 16, 2005) (emphasizing that equitable tolling is "the exception, not the rule" (citation omitted)). It is so extraordinary, in fact, that there are only a handful of Maine Supreme Judicial Court cases even mentioning equitable tolling, none of which apply the doctrine.[4] Under federal law, "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418. As the First Circuit has articulated the standard: "[U]nder federal law,

---

[3]     Maine law provides for the tolling of claims where the cause of action is "fraudulently conceal[ed]." 14 M.R.S. § 859. Maine law also provides for tolling where the claim accrues when the person bringing the action is mentally ill. 14 M.R.S. § 853. The Plaintiff has not demonstrated that either of these laws apply.

[4]     *See Dasha v. Me. Med. Ctr.*, 665 A.2d 993, 995 n.2 (Me. 1995) (discussing equitable tolling only to distinguish it from equitable estoppel); *Kobritz v. Severance*, 2007 ME 3, ¶¶ 16–19, 912 A.2d 1237 (discussing equitable tolling but not applying it); *Miller v. Miller*, 2017 ME 155, ¶¶ 14–19, 167 A.3d 1252 (discussing equitable tolling but declining to apply it); *Martin v. Dep't of Corrs.*, 2018 ME 103, ¶ 12, 190 A.3d 237 (mentioning equitable tolling but finding it not applicable); *State v. Tucci*, 2019 ME 51, ¶ 16, 206 A.3d 891 (finding that equitable tolling was not an available remedy).

the plaintiff must show 'excusable ignorance of the statute of limitations caused by some misconduct of the defendant.' " *Benitez-Pons v. Puerto Rico*, 136 F.3d 54, 61 (1st Cir. 1998) (quoting *Torres v. Superintendent of Police*, 893 F.2d 404, 407 (1st Cir. 1990)). In this case, the Plaintiff has not established that the Defendants' misconduct prevented her discovery of the claim, nor does she engage in any analysis that would allow me to equitably toll the statute of limitations. Equitable tolling is justified only in extraordinary circumstances, and the Plaintiff's arguments fall short of convincing me that it is appropriate in this case.

## CONCLUSION

Because I find that the Plaintiff's claims are barred by the six-year statute of limitations and are not entitled to equitable tolling, Defendants MedPro Associates and Cheryl Needham's motion to dismiss Count II of the Complaint (ECF No. 27) is **GRANTED**.


SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 6th day of September, 2022.