## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| YVONNE MARTIN, | ) | |
| Personal Representative of the | ) | |
| ESTATE OF PAUL MCDONALD, | ) | |
| | ) | |
| Plaintiff, | ) | Docket No. 1:21-cv-00199-NT |
| | ) | |
| v. | ) | |
| | ) | |
| SOMERSET COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANTS' MOTIONS
## FOR JUDGMENT ON THE PLEADINGS

Before me are the Defendants' Motions for Judgment on the Pleadings (ECF

Nos. 46 & 49). For the reasons stated below, the Motions are **GRANTED**.

## FACTUAL BACKGROUND[1]

This suit was brought by Yvonne Martin as personal representative of the

estate of her son, Paul McDonald. Compl. ¶ 2 (ECF No. 1). On July 2, 2015, Mr.

---

[1]     This section largely reiterates the factual background set forth in my September 6th order (ECF No. 44), though it is supplemented by several additional facts relevant to the instant Motions. The facts, which I take as true for the purpose of evaluating these Motions, are drawn from the Plaintiff's Complaint (ECF No. 1). *See Rezende v. Ocwen Loan Servicing, LLC*, 869 F.3d 40, 42 (1st Cir. 2017). In addition, I consider the documents attached to Defendants Needham and MedPro Associates' motion to dismiss (ECF No. 27). "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). There are, however, narrow exceptions "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Thus, "[w]hen the complaint relies upon a document, whose authenticity is not challenged, such a document 'merges into the pleadings' and the court may properly consider it under a Rule 12(b)(6) motion to dismiss." *Alt. Energy, Inc.*, 267 F.3d at 33 (quoting *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998)). Here, I may consider the risk assessment documents because the

McDonald was arrested for a violation of probation after being found with drug paraphernalia. Compl. ¶ 18. Because he was "not extremely responsive" when he was encountered by law enforcement, Mr. McDonald was transported by ambulance to Reddington Fairview Hospital. Compl. ¶ 19. Mr. McDonald was discharged from the hospital later that day and cleared medically for jail, but he was experiencing physical symptoms from opiate withdrawal and his discharge paperwork indicated that he needed crisis and counseling services. Compl. ¶¶ 20–22.

That same day, July 2, 2015, Mr. McDonald was booked into Somerset County Jail. Compl. ¶ 23. A search of Mr. McDonald's name in a state database as a part of the booking process yielded information that Mr. McDonald had made past threats of suicide and had previously attempted suicide. Compl. ¶¶ 24–25. As a result of these findings, Mr. McDonald was classified as at a high risk for suicide and referred by Somerset County Jail staff for a risk assessment. Compl. ¶¶ 26, 28.

On July 6, 2015, Defendant Cheryl Needham, a trained social worker and mental health technician, conducted the risk assessment. Compl. ¶ 39; Defs.' MedPro Assocs. & Cheryl Needham's Mot. to Dismiss Pl.'s Compl. ("**MTD**") Ex. A (ECF No. 27-1). Ms. Needham was an employee of Defendant MedPro Associates ("**MedPro**"). Compl. ¶ 15. Somerset County Jail contracted MedPro to provide medical services to inmates. Compl. ¶ 14. Ms. Needham confirmed that Mr. McDonald had reported thirteen past suicide attempts, including an attempt via hanging, and that he had

---

Complaint specifically refers to the risk assessments performed by Defendant Needham on July 6, 7, and 8, Compl. ¶¶ 28–41, and the documents' authenticity is not challenged.

previously engaged in outpatient therapy, inpatient programs, crisis placements, and hospitalizations as a result of his mental health struggles. Compl. ¶¶ 29, 31; MTD Ex. A, at 2–3, 5. During the assessment, Mr. McDonald reported feeling "Sad/Depressed," "Anxious," and "Angry/Irritable," and he told Ms. Needham that he was having feelings of "worthlessness/hopelessness." Compl. ¶ 30; MTD Ex. A, at 3. In addition, he rated himself a ten for suicide risk on a scale of one to ten. Compl. ¶ 33; MTD Ex. A, at 6. Ms. Needham concluded that Mr. McDonald was exhibiting numerous suicide risk factors, including previous attempts, worthlessness, psychosis/thought disorder, substance abuse, lack of supports, hopelessness, and impulsivity. Compl. ¶ 32; MTD Ex. A, at 5. Mr. McDonald was listed as emergent for 24 to 48 hours and it was recommended that he be kept on "special management observation." Compl. ¶ 34; MTD Ex. A, at 6. He was placed in a smock for safety and a slow transition was recommended. Compl. ¶¶ 35–36; MTD Ex. A, at 7.

The following day, on July 7, 2015, Ms. Needham met with Mr. McDonald to continue the risk assessment. Compl. ¶ 37. In her report, Ms. Needham wrote that Mr. McDonald "reported feeling much better and stated his suicide risk was low." MTD Ex. B, at 1 (ECF No. 27-2). Ms. Needham recommended that Mr. McDonald be allowed regular clothing. MTD Ex. B, at 1. The next day, July 8, 2015, at another risk assessment continuation, Ms. Needham reported that Mr. McDonald "was a completely different person . . . [,] was smiling and laughing . . . [, and] stated [that] he was feeling much better." Compl. ¶ 39; MTD Ex. C, at 1 (ECF No. 27-3). In a summary of the assessment, Ms. Needham wrote that Mr. McDonald had made no

threats of harm and that he was "cleared by mental health . . . and all restrictions were lifted." Compl. ¶ 40; MTD Ex. C, at 1. She also recommended no further follow up unless Mr. McDonald requested it. Compl. ¶ 41; MTD Ex. C, at 1.

The very next afternoon, on July 9, 2015, Mr. McDonald was alone in his cell. Compl. ¶ 49. Gerard Madore, a corrections officer at the jail was supposed to have conducted security rounds of Mr. McDonald's area, but, for some unknown reason, he failed to do so. Compl. ¶¶ 9, 47–48. As a result, Mr. McDonald had approximately ten minutes where he was unobserved prior to a "med pass"—what I assume to be a medical check-in. Compl. ¶ 50. At approximately 1:58 p.m., Officers Shannon Pooler and Craig Meunier arrived in Mr. McDonald's area with a medical technician for the med pass. Compl. ¶¶ 7–8, 51. When Officer Pooler got to Mr. McDonald's cell, she saw that he was unresponsive, with a brown sheet tied tightly around his neck and connected to a window beam. Compl. ¶¶ 52–54, 56, 58. He did not appear to be breathing. Compl. ¶ 56. Officer Pooler called a "code blue" at 2:02 p.m., approximately four minutes after first arriving at his cell. Compl. ¶ 57. Officer Meunier cut the sheet that was tied around Mr. McDonald's neck and started CPR. Compl. ¶¶ 58–59. At approximately 2:03 p.m., Lt. Phillip Campbell requested that 911 be called. Compl. ¶¶ 6, 60.

During the wait for emergency medical support, several people performed chest compressions and rescue breaths, including Officers Michael Berube, Meunier, and Madore. Compl. ¶ 64. Officers Eligah Munn and Gary Davis responded and recorded the incident on camera, while Captain Gary Crafts recorded a scene log of

the events. Compl. ¶¶ 66–67, 69. Officer Berube used an automated external defibrillator to assess Mr. McDonald but did not issue any shocks, and Officer Joshua Hansen observed the assessment. Compl. ¶¶ 65, 68.

Emergency medical personnel arrived at approximately 2:07 p.m., at which point Mr. McDonald was transferred to the hospital. Compl. ¶¶ 61, 70, 73–75. Mr. McDonald's condition continued to decline, and he died on July 16, 2015. Compl. ¶¶ 76–80, 82.

On July 16, 2021, the six-year anniversary of her son's death, Ms. Martin filed a lawsuit against Somerset County, Sheriff Dale Lancaster, who was responsible for "the oversight and operations of the Somerset County Jail," Captain Crafts, Lt. Campbell, Officers Pooler, Meunier, Madore, Berube, Munn, Davis, and Hansen, MedPro, and MedPro employee Cheryl Needham. Compl. ¶ 4. Defendants MedPro and Needham moved to dismiss the claims against them. Defs.' MedPro Assocs. & Cheryl Needham's Mot. to Dismiss Pl.'s Compl. (ECF No. 27). I granted their motion to dismiss on the grounds that the Plaintiff's claims were barred by the applicable six-year statute of limitations and were not entitled to equitable tolling. Order on Defs. MedPro Assocs. & Cheryl Needham's Partial Mot. to Dismiss Pl.'s Compl. 10 (**"September 6th Order"**) (ECF No. 44); available at *Martin v. Somerset Cnty.*, No. 1:21-cv-00199-NT, 2022 WL 4079239 (D. Me. Sept. 6, 2022).

Now, the remaining named Defendants[2] move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), arguing that the claims against

---

[2]     The Plaintiff's suit also asserts claims against "Jane and John Does #1–5" and "Jane and John Does #6–10." Compl. ¶¶ 16–17 (ECF No. 1). I note that the reasoning in this order is equally applicable

them are also barred by the statute of limitations. Defs. Craig Meunier and Gerard Madore's Mot. for J. on the Pleadings ("**Meunier & Madore Mot. for J.**") 1 (ECF No. 46); Defs. Somerset County, Dale Lancaster, Gary Crafts, Phillip Campbell, Shannon Pooler, Michael Berube, Eligah Munn, Joshua Hansen, and Gary Davis's Mot. for J. on the Pleadings ("**County Defs.' Mot. for J.**") 1 (ECF No. 49).

## LEGAL STANDARD

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is "accorded much the same treatment" as a motion to dismiss under Rule 12(b)(6). *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54 (1st Cir. 2006).[3] As I do on a 12(b)(6) motion, I "view the facts contained in the pleadings in the light most flattering to the [Plaintiff] and draw all reasonable inferences therefrom in [her] favor." *Id.* "Like Rule 12(b)(6), Rule 12(c) does not allow for any resolution of contested facts; rather, a court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." *Id.* "Judgment on the pleadings based on the statute of limitations is appropriate only if the record, viewed in the light most favorable to [the Plaintiff], 'leaves no plausible basis for believing that the claim may be timely.' " *Est. of Rosenberg v. Macy's, Inc.*, C.A. No. 20-11860-MLW, 2022 WL 4547074, at \*9 (D.

---

to the claims against the Jane and John Does, as the Complaint makes no assertion that they committed any acts or omissions after Mr. McDonald was transported to the hospital on July 9, 2015.

[3]     The "modest difference" is that "[a] 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole." *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54–55 (1st Cir. 2006). Here, however, the Defendants' Answers are not relevant to my analysis because the Defendants agree that the source of the pertinent facts is the Plaintiff's Complaint.

Mass. Sept. 29, 2022) (quoting *Erlich v. Ouellette, Labonte, Roberge & Allen, P.A.*, 637 F.3d 32, 35 & n.4 (1st Cir. 2011)).

## DISCUSSION

The Plaintiff in this case, Mr. McDonald's mother, filed her suit on the six-year anniversary of her son's death. In my September 6th Order, I dismissed the claims against Cheryl Needham and MedPro after finding that the claims were barred by the applicable statute of limitations. September 6th Order 10. The Defendants argue that the same reasoning leads to the inescapable conclusion that the claims against them are similarly time-barred. Meunier & Madore Mot. for J. 1; County Defs.' Mot. for J. 5. I agree.

I need not repeat my September 6th Order in its entirety here, but I find it useful to briefly summarize several key points. First, as I noted in my September 6th Order, "claims under 42 U.S.C. § 1983 are governed by Maine's six-year residual statute of limitations." September 6th Order 6; *see also Small v. Inhabitants of Belfast*, 796 F.2d 544, 546 (1st Cir. 1986). Second, "under federal law, [a § 1983] cause of action accrues 'when the plaintiff knows or has reason to know of the injury on which the action is based.'" September 6th Order 6 (quoting *Álamo-Hornedo v. Puig*, 745 F.3d 578, 581 (1st Cir. 2014)). Third, in survivor actions like this one, "'the great weight of federal authority favors a finding that' the date of accrual is 'tied to the date when the injured party knows or has reason to know of the injury.'" September 6th Order 7 (quoting *Garrett v. Belmont Cnty. Sheriff Dep't*, No. 2:08–cv–0452, 2011 WL 765975, at *3–4 (S.D. Ohio Feb. 25, 2011)); *id.* at 7–8 (collecting cases).

In light of these basic principles, the question here is when Mr. McDonald, the injured party, knew or had reason to know of his injuries. The Plaintiff asserts that her son was injured by the Defendants because he was denied "adequate medical care while incarcerated" and because the Defendants "fail[ed] to provide [Mr. McDonald] any mental health care and . . . fail[ed] to provide him with adequate supervision and observation." Compl. ¶¶ 95–96. But, although Mr. McDonald died on July 16, 2015, the events underlying the injuries suffered by Mr. McDonald are all described in the Complaint to have taken place days before, while he was in custody at Somerset County Jail. Compl. ¶¶ 46–73. For example, any medical care Mr. McDonald did or did not receive while incarcerated would have been on or before July 9, 2015. Similarly, the failure to adequately supervise and/or observe Mr. McDonald, as it is described in the Complaint, took place on or before July 9, 2015. Importantly, the Complaint makes no allegation that any of the Defendants committed any acts or omissions after Mr. McDonald was transferred to the hospital on July 9, 2015. *See* Compl. ¶¶ 74–80.

Taking these facts together, even viewing the Complaint in the light most favorable to the Plaintiff, the claims against all of the Defendants moving for judgment here accrued on or before July 9, 2015. And, because the Plaintiff did not file her suit until six years and seven days after July 9, 2015—the date of accrual— her claims against the Defendants are untimely and must be dismissed.[4]

---

[4]      Although the Plaintiff did not raise the possibility of tolling in her response—or file any response at all, for that matter—I note that equitable tolling would not be appropriate here for the

8

**CONCLUSION**

For the reasons stated above, the Court **GRANTS** the Defendants' Motions for Judgment on the Pleadings (ECF Nos. 46 & 49).[5]

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 22nd day of November, 2022.

---

reasons stated in my September 6th order. *See* Order on Defs. MedPro Assocs. & Cheryl Needham's Partial Mot. to Dismiss Pl.'s Compl. 8–10 (ECF No. 44).

[5]    Because I find the Plaintiff's claims to be time-barred, I need not address the Defendants' additional arguments in favor of dismissal. *See* Defs. Craig Meunier and Gerard Madore's Mot. for J. on the Pleadings 7–12 (ECF No. 46).